Our fourth case this morning is Dunbar v. Kohn Law Firm. These are consolidated cases, numbers 17-2134 and 17-2165. May it please the court, counsel, I'm Daniel Edelman for the appellants. Attorneys sent collection letters which offered settlements and gratuitously stated that the settlements, quote, may have tax consequences, close quote. This is done to collect more money. In older cases such as Sledge v. Sands, the letters explicitly stated that there are no tax consequences if you pay in full. That was found problematic, so now it's left for inference and oral communication. There is, of course, no requirement that a debt collector say anything about tax consequences. What was said is very misleading. A true statement would be, quote, non-payment of principle of a debt may result in taxable income, but it will not if you file bankruptcy, have insufficient funds to pay all of your debts, or have a good-faith dispute of the debt. And there are also other exceptions. Quite right, is it, Mr. Edelman? The test is insolvency, right? That is correct. As opposed to whether you've got cash. It is balance sheet insolvency as opposed to... Having the money. Correct. On the other hand, the vast majority of people to whom debt collection letters are sent are, in fact, insolvent. There's statistics about 20% of American households have negative net worth. About 20% of American That doesn't matter here. We use an objective test to determine whether this is misleading, and I don't know how an innocuous statement like this may have tax consequences. May doesn't mean will, or even probably will. It's a very I don't think that either the use of may, or the subject of taxes, or consult your tax advisor when said to somebody who's having a problem paying a debt, is innocuous. People are afraid of the IRS. In other cases, we've gotten into evidence, and it shows that people have paid their debts in full, or paid to within $600 of the full amount, because they didn't want IRS problems. But in those cases, there's specific mentions of the IRS, or about the amounts, the 600, the amounts that would trigger the tax obligations. Here, we just have this statement. This settlement may have tax consequences. It doesn't have the other, shall we say, coercive to some, if you want to use that word, language or connotation, raising the specter of the IRS. The vagueness, well, tax consequence and the IRS are equivalent. The vagueness amplifies the problem. It doesn't mitigate it. If you actually specifically outlined the exceptions, the statement would be toothless. Why? In the case of the plaintiffs, both were balance sheet insolvent at the time of the letters, and they were in there for two to six months. Bankruptcy means no income for tax purposes, and there's no reporting requirement. If it is reported, you simply have to inform the IRS that you filed bankruptcy. And along those lines, what happens if you don't inform the IRS? So you have a positive, affirmative obligation to inform the IRS of your status, and if you don't inform the IRS, are there any negative consequences to that? The IRS does not require reporting of debt discharged from consumer bankruptcy. If for some reason the creditor reports it, and the IRS, and you get a 1099, what you're supposed to do and must do if the IRS inquires is say, I declare bankruptcy. In most cases, creditors do not, in fact, report it. The IRS does not want the extra work. If you're insolvent but don't file bankruptcy, you may have to submit a balance sheet on the form provided for that purpose. But the problem is this. The IRS reference is a significant threat. People actually pay millions of dollars to fake IRS agents that call them. The IRS puts that on their website. It's a serious threat, and you can't make a statement which is true in a very few cases. People who willfully refuse to pay just debts without disclosing when the statement of tax consequences is true. Using may as opposed to will doesn't make it any better. That's the Boucher decision from yesterday. You can't use vague language to overstate the magnitude of what's going to happen. You have cases like Drennan versus Van Roo, a legal review connotes some kind of legal action being taken. FTC versus check investors. References to criminal consequences of dishonored checks. You may not make such statements if the proportion of people who are actually prosecuted for issuing a dishonored check is minuscule. And saying consult your tax advisor doesn't help. The people to whom these letters are addressed don't have the wherewithal to do so. A lawyer sends a letter talking about tax consequences. It's going to be taken seriously. Adding a statement about consult your tax advisor simply means you better really take this seriously and get your own lawyer. Well, it may be cheaper for the consumer to just pay the debt in full and avoid the tax consequences. And when you get into phone records and collection notes, that in fact is what happens. Mr. Ellman, you contend that the must say something about tax consequences is groundless. This is correct. And yet we have this line of cases from around the country in which debt collectors have been sued on precisely that theory. What do you make of that? And what do you make of that if you're a debt collector who says I want to be cautious? A few years ago, a few cases were brought of that nature. Nobody accepted the theory except one case from the northern district of New York that said that's just wrong. Since the Second Circuit decision, there have not been any such cases. The Second Circuit decision was at least six months prior to the letters in this case. And yet in this area, this pattern of damned if you do, damned if you don't litigation has a long history and precedents can be overruled. Witness our Suez decision dealing with venue. Then the answer would be make a full statement. The full statement you've described is not accurate. That you've suggested is a safe harbor because of the difference between insolvency and not having money available. And the more disclosure that might be required, the more risky that disclosure would be under precisely the kinds of theories you're developing. I disagree. The reason why I've never seen a full disclosure, and your honor is correct, that the test would be insolvency as opposed to cash flow, although to a consumer that's not... I understand the point, but it's also the kind of discrepancy that could easily draw a lawsuit, right? I would disagree. I don't think anybody, once the disclosure is made about inability to balance sheet insolvency versus cash flow. I don't think I've ever heard you say somebody might not be confused by anything, Mr. Edelman. I don't think it would be because... I know you and Mr. Schultz and this court see a lot of each other. We're talking not about business, we're talking about consumers. I think the two would coalesce. It's not... Okay, thank you. Anyway, a full disclosure would alert the consumer to the fact that exceptions based on inability will remove the vast majority of tax consequences. The exceptions apply to the vast majority of people who get collection letters. A vague reference to tax consequences without disclosure of that critical exception is highly misleading. There are no tax consequences in the CPA. Therefore, you should not reference tax consequences in collection letters. Unless there's some questions, I'll save the remainder of my time. Thank you. Good morning. David Schultz for the Applebee's. May it please the court, Counselor. The financial institutions like my clients issue many 1099s, and the first part of the year they get inundated with many people saying, why are we getting this? This is an effort to try to at least let them know something's coming. If you remember the great Oprah, the last show she did, she gave away 250 cars for all the audience members. Great PR at the time, and what they all got hit with a $6,000 tax bill. It became a fiasco. People had to sell the cars. This is an effort to try to avoid that kind of thing. As you know in your private practice, if you're a plaintiff's lawyer or as a judge, settlement cases, you got to front the tax aspect of it. You got to say something about it. Otherwise, what happens, and my plaintiff's lawyer friends tell me this, and I get phone calls the first part of the year. You get inundated with people calling, why did I get this 1099? It's an effort to try to front the issue, and as you said, and the courts have said, a simple statement, a simple statement, the courts have said is okay, and this is the simplest one that's been accepted by many courts. As soon as you start getting into the more complex statement or start raising some things like insolvency, bankruptcy, $600, IRS, 1099, that's when the courts have said, now you might be going across the people misleading them, and so those claims stay. Our clients try to follow what's going on in the law, and a benign statement like this has been accepted. It's similar to, I thought we cited the Taylor case, the Seventh Circuit opinion, a decade or so ago. It said, if applicable, your account may or will accrue interest at a rate specified in your contractual agreement with the against that letter, and they argue, well, but the interest didn't go up for me, and this court said, and we use the word frivolous, it was a frivolous argument, and it pointed out, the letter didn't say it would, only that it might increase, as in this instance, all we're saying is it might be. So what do we make, Mr. Schultz, what do we make of the cases decided under the Federal Trade Commission Act, the Geritol case, the claims are made that really are only applicable to a small fraction of potential consumers? This, we're saying there's a tax consequence, a settlement results in a tax, that is true for everyone. There is a tax consequence, we must, if there's a settlement, we must issue the 1099, unless the settlement's below the required amount. So this is not an issue where there's nothing going to happen, and that's what the letter says, and we've got to focus on the, the complaint was that somehow, somehow that that sentence misled by implying that unless the person pays the entire amount that is alleged, the consumer could be reported to the IRS, that's the allegation, or unless the person pays the entire amount alleged in the letter, the consumer is going to have to pay taxes on the unpaid balance, that's the theory of the deception, the misleading. It says nothing about that, it's a, it's a, it's an offer of settlement, it doesn't say anything about taxes if you don't settle, it doesn't say anything about taxes if you pay the full amount, it simply says you owe Discover, it was a judgment, you owe Discover $4,000, we're offering you a substantial benefit, a substantial reduction, and there could be taxes, this settlement may have tax consequence, didn't say not paying is going to have tax consequence, didn't say paying in full is going to have tax consequence, didn't say anything about that. Same thing with Midland Funding, and these are obviously large financial institutions, they want to be careful with the IRS, the IRS audits them on the 1099, it's a big issue in the financial industry. Midland Funding is part of a publicly traded company, they want to be, they want to be careful. You know, this court has, and I think you touched on it, Judge Hamilton, offered some suggestions and Mr. Edelman in his reply brief offered a suggestion that, in my mind, tracks along the lines of those cases that said way too much, not complete, now you've crossed the line, now you're starting to confuse. This is kind of, this is more like what the court did when the Everett case, you had, we are not obligated to renew this offer, a nice simple sentence about settlement. That was your case actually. It was my case, and if I recall correctly on remand, the testing indicated that the letters were less confusing than the Seventh Circuit's proposed safe harbor language. I was involved in that, that's what our experts talked about. But it's still a benign statement, once you start getting into the big... Can I ask you, Mr. Schultz, I was kind of expecting something in your argument about risks, litigation risks, if you say nothing, but I didn't see it, and I was wondering is that a tactical or grasping here? No, it's a Rule 12 ruling, I was trying to probably keep it narrow, but I think what I would expect to see is the claim, if you settle for, in this instance, $2,600, that's all you're going to have to pay, and then we're going to report it to the IRS. But then, if you didn't tell them, you're going to report it to the IRS and they have to pay an extra $200, and the claim is going to be, you said I was done with this for $2,600, that's not true. That was a false statement, and you knew it was a false statement. I actually had to pay $2,800 because of the IRS, and then I had to get an accountant and other things. I could see that's where it's going to go, if you don't give them some kind of heads-up, and that's what this is, a simple heads-up. You know, when you get more complicated also, if you... No court, except for that one Ellis decision, though, has accepted that theory yet. Well, they had a little different theory alleged in that, but I could see this theory being applicable, and I'm not sure I want to start throwing out theories from plaintiff's department. I understand. But I could absolutely see that something like that would come up. If we front it, which is all they're trying to do, is you front it, hopefully you're being... I think my client's views, they're being helpful. They're not trying to be hurtful. They're not trying to be deceptive. They're just fronting an issue, and they're doing it in a fairly benign way. I think the interpretation that this is really meant to get full payment... If you ever worked at one of these companies, or a marketing person said, here's a great plan, boss. What we're going to do is we're going to ask for substantial discounts. You know why? Because this one sentence here about tax consequences on settlement is going to cause them to pay full. That's crazy. That's bizarre. Nobody do... They want to get paid. They want to settle. It's been a while. These debts were charged off a number of years ago. They went to judgments. These are judgments. So, you know, it's also another case that reminded me of another Gilley case in the Supreme Court about a year ago. That was an e-claim, 1692 e-claim. It was the one where the Ohio attorney generals were hiring collectors, and they'd have letters on the attorney general letterhead, and the claim was, well, you're deceiving people, and the Supreme Court said no. That was absolutely a truthful comment. They were acting as assistant attorney generals in connection with the question. That's what the letter said, although maybe it might have been a little confusing to you, but that was a truthful statement, and they ended the opinion by saying, in other words, section 1692e bars debt collectors from deceiving or misleading consumers. It does not protect consumers from fearing the actual consequences of their debts. There's a consequence of the settlement. We're letting them know about that. We're not trying to inject fear or anything else. So my time is just about up. If there's no other questions. Thank you very much. Thank you. Mr. Edelman, anything further? Two very brief points. Most of the statements that Council just made are evidentiary in nature, not in the record in a 12b6 motion. The reasons these statements are made, whether anybody actually complains about having to pay $2,800 as opposed to $2,600, is not in the record. If people are in fact failing to pay for prolonged periods of time, it is likely that they meet the test of insolvency and don't have to pay anything to the IRS. In Taylor, which Council referenced, the question is whether it is a truism that a credit card or similar debt which is subject to at least statutory interest accrues interest. Of course it does. It's a case, it's a statement which is 100% or close to 100% true as opposed to one which may be true in one or two percent of cases and false in all the others. That is what we contend we are dealing with here. Thank you, Your Honours. Thank you. Thanks to both Council. The case is taken under advisement.